414

DELIA SCHIERER, WIDOW OF ALBERT C. SCHIERER, DECEASED, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed November 16, 1938.*

CASSIDY & KNOBLOCK, for claimant.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The amended complaint in this case alleges that Albert Schierer, deceased, on the 26th day of June, 1936, was in the employ of the State of Illinois, and had been in the employ of the State of Illinois many months prior thereto, as an oil inspector in the Department of the Illinois State Oil Inspection; that on said date, he was driving an automobile which was the property of the State of Illinois, on a highway in the County of Woodford, and State of Illinois, near the town of Washburn; that at said time he was performing his duties as State Oil Inspector; that sometime between five and six P. M., the automobile in which he was riding, collided with a motor truck operated by H. Hahn who resides in Toluca, Illinois.

The evidence discloses that Schierer was going around a curve in the road and Hahn was going in the opposite direction. Schierer stated after the accident that he did not see of the car at all until it hit him; that "it was around a bend, and he was driving toward the sunset".

Schierer received severe injuries, his left arm being severed from his body. He was removed to St. Francis Hos-

pital, Peoria, Illinois, where he remained a patient until his death on July 1st, 1936, death being the direct result of the injury suffered by him in this accident.

The annual earnings of the deceased during the year next preceding the injury were $1,800.00.

Claim was filed herein on September 15th, 1936.

Deceased left his wife and four children: Mary Elizabeth, 18, Duane Schierer, 15, Arthur Schierer, 11, and Philip Schierer, 6, whom he was under legal obligation to support at the time of his injury, and they all reside at Metamora, Woodford County, Illinois.

In the complaint it is alleged that the decedent's doctors' bills were $357.00; hospital bill, $141.25; nursing services, $63.00; ambulance service, $15.00; and funeral expenses, $400.00. The record shows that the hospital, doctors' and nurses' bills were all necessary and reasonable, with the exception of $10.00 item hereinafter referred to.

Dr. Sumner M. Miller of Peoria testified that he was called by Dr. Charles Boon of Washburn to assist in the case of deceased; that he, Dr. Miller, was the chief surgeon in charge; that he was called on June 26, 1936 to the St. Francis Hospital in Peoria, Illinois. Dr. Miller testified that deceased had suffered traumatic amputation of the left arm, which was entirely off at the shoulder joint; that he was suffering from surgical shock which made impossible any attempt to treat the stump surgically, as he would have died had he attempted such a thing; that he did a minor amount of repair work on the stump, cleaned it up, put on hot dressings, treated him for shock for the relief of pain, and injected glucose solution in the veins and under the skin, with periods of intermission practically continuously and repeated at intervals during the next two days; that on June 29th, the deceased recovered from the shock; that his condition had so improved that they performed an amputation; that Dr. Boon was associated with him in the treatment of this case during this period and at the time of the amputation; that deceased reacted well from the operation, but within a few hours he became very sick and prostrated with great swelling of the tissues near the wound; that the wound was opened, and quantities of gas were expressed by pressure on the surrounding parts; that the wound was then opened widely for drainage; that solutions were again administered under the skin and in the veins,

and large doses of gas bacillus antitoxin were administered; that deceased became very toxic, rapidly becoming worse, went into collapse, and died on July 1st, 1936, of gas bacillus infection. Dr. Miller testified that he spent an hour or two the first night and three or four hours a day every day in giving him solutions and looking over him. He testified that the deceased died from gas bacillus infection resulting from contamination of the wound at the time the injury was received. For these services Dr. Miller testified that he made a charge of $200.00, and that was a fair and reasonable charge.

Dr. C. L. Boon assisted with some of the work and he made a charge of $25.00, and the evidence shows that this was a fair, reasonable and customary charge for the services he rendered. Dr. C. W. Magaret, who also assisted in the case in giving blood transfusions, made a charge of $110.00, but the usual charge for such service is $50.00 for each transfusion, and there is no evidence to support the charge for the extra $10.00. $24.00 was charged for the antitoxin, and that is a fair and reasonable charge. That was purchased and paid for by Dr. Miller, several bills having been rendered by the druggist who supplied it to Dr. Miller, and that is the usual and customary charge. Therefore, the sum of $224.00 is due Dr. Miller. It was also necessary to have two nurses in attendance, a day nurse and a night nurse, and Dr. Miller testified that the usual and customary charge of nurses was $6.00 a day, and that the hospital charged them $1.00 for their meals, making $7.00 per day for their charge.

Delia Schierer, wife of the deceased, testified that she paid Julia Fidler, one of the nurses, the sum of $28.00, that being the usual charge. Miss Marie Henebry's bill was $7.00 per day for five days, or $35.00, but she was not paid. The bill of E. A. Rickett in the amount of $15.00 for ambulance service was reasonable.

Delia Schierer, after the death of deceased, remarried on April 5, 1937.

Paragraph 6 of Section 3 of the Workmen's Compensation Act provides that the provisions of such Act shall apply automatically to all employers and all their employees, engaged in "any enterprise in which explosive materials are manufactured, handled or used in dangerous quantities". Paragraph 7 of Section 3 of the Compensation Act provides that the provisions of such Act shall apply to all employers

and all their employees engaged in any department of "any enterprise wherein * * * explosives * * * or inflammable vapors or fluids * * * are manufactured used, generated, stored or conveyed in dangerous quantities". Schierer's duties required him to obtain samples of gasoline, kerosene, etc., and to test the same. The samples were taken from railroad tank cars containing 7,000 to 8,000 gallons, upon the arrival of such cars at their destination in the territory assigned to said decedent, which territory comprised the greater part of five counties. At the time of the accident in question he was driving toward his home with a number of samples which he had obtained that day. All samples were taken by Schierer to his home and tested, for the reason that all testing had to be done where ice and the necessary electric current were available for the making of the prescribed tests. That such fuels were inflammable and explosive was shown by the fact that in February, 1936, the gasoline in one of the containers in the possession of said Schierer expanded until the container exploded, the gas ignited, and the flames spread to other containers and over the interior of the one-room building in which the tests were being made, and were put out by the local fire department which was called for that purpose.

Under all of the evidence in the case, and under the law as laid down in the case of *Gibson* vs. *Ind. Board*, 276 Ill. 75, we find that at the time of the accident in question Schierer and the respondent were operating under the Workmen's Compensation Act, and that the death of said decedent resulted from injuries which arose out of and in the course of his employment. Under the provisions of Section 7, paragraphs (a) and (h), and Section 8, paragraph (a), the respondent is required to pay compensation to the beneficiaries provided by such Act, in the total amount of $5,500.00, together with the necessary medical, surgical and hospital services in the total amount of $568.25, as shown by the evidence herein;—the total amount required to be paid being $6,068.25. There is no authority under the provisions of the Workmen's Compensation Act for the allowance of the amount expended for funeral expenses.

We further find that the children's share of the compensation which accrued between the date of the death of the

decedent and April 5, 1937, should be paid to their mother for their support.

Award is therefore made and entered herein as follows:

| | |
|---|---:|
| To Delia Schierer, for the bill she paid to Julia Fidler......$ | 28.00 |
| To Delia Schierer, for the use of Marie Henebry............. | 35.00 |
| To Delia Schierer, for the use of Dr. Sumner M. Miller, for medical services of $200.00 and antitoxin for which he paid $24.00 .......................................... | 224.00 |
| To Delia Schierer, for the use 'of Dr. C. L. Boon............. | 25.00 |
| To Delia Schierer, for the use of Dr. C. W. Magaret........ | 100.00 |
| To Delia Schierer, for the use of E. A. Rickett on account of ambulance ........................................ | 15.00 |
| To Delia Schierer, for the use of St. Francis Hospital, for services, medical supplies, etc............................ | 141.25 |
| To Delia Schierer, for the use of herself and Duane Schierer, Arthur Schierer, and Philip Schierer, compensation from the date of the death of said decedent to April 5, 1937, to-wit, 39 5/7 weeks, at $18.00 per week.................. | 714.86 |
| To the duly and legally appointed guardian of Duane Schierer, Arthur Schierer, and Philip Schierer, the sum of $4,785.14, payable in weekly installments of $18.00 per week commencing April 5, 1937......................... | 4,785.14 |
| Total .......................................... | $6,068.25 |

The total amount of the award to Delia Schierer as above set forth has accrued and is payable at this time.

Compensation has accrued to Duane Schierer, Arthur Schierer and Philip Schierer from April 5, 1937 to November 15, 1938, to wit, 84 weeks at $18.00 per week, in the amount of $1,512.00, which is payable to their duly appointed guardian forthwith. The balance of the award to said Duane Schierer, Arthur Schierer and Philip Schierer, to wit, $3,273.14, is payable to their duly appointed guardian in installments of $18.00 per week from November 15, 1938 until such sum has been fully paid.

It is further ordered that such guardian, when appointed, shall furnish a certified copy of his, her or its letters of guardianship to the Auditor of Public Accounts of this State.

This court reserves jurisdiction of this matter for such other or further orders as may be in accordance with law.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved July 3d, 1937 (Session Laws 1937, p. 83) and being by the terms of such Act, subject to

the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Fund in the manner provided for in such Act.